Carol A. Sobel, SBN 84483
Katherine Robinson, SBN 323470
Weston Rowland, SBN 327599
LAW OFFICE OF CAROL A. SOBEL
1158 26th Street, #552
Santa Monica, CA 90403
t. 310 393-3055
e. *carolsobel@aol.com*
e. *klrobinsonlaw@gmail.com*
e. *rowland.weston@gmail.com*

Shakeer Rahman, SBN 332888
LAW OFFICE OF SHAKEER RAHMAN
838 East 6th Street
Los Angeles, CA 90010
t. 323 546-9236
e. *shakeerr@cangress.org*

A. Dami Animashaun, NY Bar No.
5552849 (*pro hac vice* forthcoming)
14 Wall Street, Suite 1603
t. 929 266-3971
e. *animashaun@pm.me*

Attorneys for Plaintiffs

Paul Hoffman, SBN 71244
Michael Seplow, SBN 150183
Aidan McGlaze, SBN 277270
John Washington, SBN 315991
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
9415 Culver Blvd, #115
Culver City, California 90230
t. 310 396-0731; f. 310 399-7040
e. *hoffpaul@aol.com*
e. *jwashington@sshhlaw.com*

Christopher Martin, Esq. SBN 310026
LAW OFFICE OF CHRISTOPHER MARTIN
P.O. Box 11200
Los Angeles, CA 90011
t. 323 359-2211
e. *cdmartinlaw@gmail.com*

Colleen Flynn, SBN 234281
LAW OFFICE OF COLLEEN FLYNN
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
t. 213 252-9444
e. *cflynn@yahoo.com*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GREG AKILI, BLACK LIVES MATTER LOS ANGELES, SHANNON THOMAS, and EMILY ALLERS, individually and on behalf of a class of similarly situated persons,<br><br>PLAINTIFFS,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, CHIEF MICHEL MOORE, LIUETENANT CARLOS FIGUEROA (No. 35260), CAPTAIN WARNER CASTILLO (No. 31715), OFFICER DANIEL ORLIK (No. 43917), OFFICER BRITTANY PRIMO (No. 40695), and DOES 1-10,<br><br>DEFENDANTS. | Case No.:<br><br>**COMPLAINT: CLASS ACTION**<br><br>1. Freedom of Speech and association (42 U.S.C. § 1983 1st and 14th Amendments)<br><br>2. Excessive Force (42 U.S.C. § 1983 4th and 14th Amendments)<br><br>3. Failure to Intervene (42 U.S.C. § 1983 4th and 14th Amendments)<br><br>4. Municipal Liability - Unconstitutional Policy, Practice, or Custom; Ratification; Failure to Train, Supervise, Discipline, or Correct (42 U.S.C. § 1983)<br><br>5. Violation of the Bane Act (Cal. Civil Code § 52.1); Cal. |

Constitution, Article 1, §§ 2 (Freedom of Speech), 3 (Right of Petition and Assembly), 7 (Due Process), 13 (Search and Seizure), 19 (Cruel and Unusual Punishment)

6. Assault

7. Battery

**DEMAND FOR JURY TRIAL**

## I.  INTRODUCTION

1.    On December 6, 2020, six minutes before declaring an unlawful assembly, riot-clad Los Angeles Police Department ("LAPD") officers attacked a crowd of peaceful protesters assembled on a Sunday morning near Los Angeles Mayor Eric Garcetti's mansion. For several weeks, Black Lives Matter Los Angeles had been holding a daily peaceful morning protest in front of the Mayor's mansion. Its members and supporters were calling on then president-elect Joe Biden not to appoint Mayor Garcetti to his cabinet, in light of the Mayor's policies on homelessness and transportation, as well as his support of the LAPD's discriminatory policing practices against communities of color and those protesting the LAPD's tactics. LAPD personnel were present at all the daily protests but took no action against any protester until December 6th.

2.    December 6th's demonstration started at about 9:15 a.m. as a peaceful morning protest, like the daily protests before it, and was attended by many of the same individuals who had protested over the course of many days at the same location. But then, at about 9:43 a.m., the LAPD, premised on an alleged violation of a municipal noise ordinance, deployed lines of riot officers against the protesters. Shoving and swinging batons, LAPD officers rushed at and knocked down peaceful protesters assembled in front of the Mayor's mansion and then brutally beat them with batons, including head strikes, causing serious injuries. LAPD only arrested one protester – not the person who allegedly violated the noise ordinance – and the City Attorney's office declined to file charges.

3.    "The handheld baton is a less lethal tool approved to be used on skirmish lines during crowd control incidents, to push a crowd. The baton is not authorized to be used as an impact device unless the officer or another individual is

being physically threatened."[1] LAPD Use of Force-Tactics Directive No. 8.2 prohibits the use of batons for "mere non-compliance" and instructs officers "to avoid striking the head."[2]

4.      The peaceful protesters posed no threat to the officers that could possibly justify the use of force in this circumstance. The Plaintiffs' injuries caused by the use of baton strikes are strong evidence in this instance that LAPD's training in the use of these potentially lethal weapons was absent, seriously deficient, or intentionally indifferent to the known serious harm that can result from the use and misuse of impact weapons such as batons.

5.      The LAPD engaged in this conduct on December 6, 2020, even after previously agreeing multiple times not to do so again. *See* Los Angeles Times, June 15, 2020, "LAPD Violence Against George Floyd Protests Erodes Decades of Reform."[3] Over the course of the last several decades, Defendant City has been sued repeatedly for many of the same tactics challenged herein, including ketteling (i.e., corralling) protestors before declaring an unlawful assembly and excessive force with batons and rubber bullets. Such illegal conduct by LAPD at demonstrations over the course of 2020 and early 2021, resulted in the entry of a Preliminary Injunction on May 10, 2021, in *Black Lives Matter Los Angeles, et al. v, City of Los Angeles, et al.,* Case No. CV 20-5027 CBM, restricting the LAPD's use of 40mm and 37mm kinetic impact projectiles, citing the "'unfortunate history of civil rights

---

[1] "Independent Examination of the Los Angeles Police Department 2020 Protest Response," Report by Independent Counsel, Gerald Chaleff, ("Chaleff Report") available at http://www.lapdpolicecom.lacity.org/041321/BPC_21-067.pdf at p. 9

[2] LAPD Use of Force-Tactics Directive No. 8.2, available at  http://lapd-assets.lapdonline.org/assets/pdf/tactical-directiveno8.2-baton.pdf

[3] https://www.latimes.com/california/story/2020-06-14/lapd-protest-history-criticism-heavy-tactics

violations by LAPD officers.'" ECF 101, citing *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles,* 246 F.R.D. 621, 628 (C.D. Cal. Dec. 14, 2007).

6.      On March 10, 2021, Commissioner Gerald Chaleff issued a report commissioned by the Los Angeles City Council entitled "Independent Examination of the Los Angeles Police Department 2020 Protest Response" ("Chaleff Report"). The report analyzed the LAPD's crowd control tactics during the demonstrations in May and June 2020, resulting from the death of George Floyd. The report documented serious longstanding problems in the LAPD.[4] At a hearing of the Los Angeles City Council Public Safety Committee to receive the Chaleff Report and testimony from the report's author, City Councilmember Monica Rodriguez, chair of the Public Safety Committee, characterized the LAPD's response to the George Floyd protests as "representing one of the worst examples in the history of the department." Council Committee Reviews Report on LAPD Mishandling of George Floyd Protests – CBS Los Angeles, (cbslocal.com).

7.      Just six months after its mis-handling of the George Floyd protests, including improper and unconstitutional use of batons against protesters,[5] on December 6, 2020, the LAPD engaged in similar conduct against Plaintiffs. By ketteling the demonstrators, shoving and striking them with batons, and through other conduct detailed herein, Defendants violated Plaintiffs' federal and state constitutional rights.

## II.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights

---

[4] Chaleff Report at p. 53

[5] https://www.latimes.com/california/story/2020-06-11/lapd-violated-protocols-for-batons-and-less-lethal-bullets-injuring-many-protesters;
https://projects.propublica.org/protest-police-tactics/

jurisdiction). This Court has jurisdiction to issue declaratory or injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

9.      Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391, as all Defendants and events giving rise to the claims herein occurred in the Central District of California.

### III.    PARTIES

#### A. *Plaintiffs*

10.    Organizational Plaintiff **BLACK LIVES MATTER LOS ANGELES ("BLMLA")** is part of a nationwide organization with chapters in many major cities, including Los Angeles. The organization originated in Los Angeles with demonstrations on July 13, 2013, the date George Zimmerman was acquitted of killing teenager Trayvon Martin in Florida. **BLMLA** is one of the largest and most active chapters of the organization, with nearly 500 active members and organized ally groups, including White People for Black Lives. On average, **BLMLA** sponsors four actions a week.

11.    During the course of the December 6, 2020 protest and others over the preceding months, while **BLMLA** and its members were engaged in lawful First Amendment activity, the LAPD used unjustified and excessive force to terminate the protests, including the indiscriminate use of so-called "less lethal" weapons that caused injury to its members and instilled fear in them that, if they chose to assemble in public spaces to express their opinions, they would be the subject of such violence and arrest.

12.    Defendants' actions interfered with **BLMLA**'s right to assembly and speech.  **BLMLA** plans to assist, plan, participate in, hold similar events in the future, on its own or in conjunction with others, and is fearful that the same unlawful police actions in response to this and similar protests will be repeated due to

LAPD's practices, policies, and customs that caused the unlawful action in response to this protest.

13.     Plaintiff **GREG AKILI**, a seventy-two-year-old individual, is and was at all times relevant hereto, a resident of the County of Los Angeles, City of Los Angeles. He is an organizer with **BLMLA**.

14.     Plaintiff **SHANNON THOMAS**, an individual, is and was at all times relevant hereto, a resident of the County of Los Angeles, City of Los Angeles.

15.     Plaintiff **EMILY ALLERS**, an individual, is and was at all times relevant hereto, a resident of the County of Los Angeles, City of Los Angeles.

16.     The damages class consists of approximately 50 individuals who LAPD personnel shoved or struck with a baton in a manner contrary to proper baton use and without lawful justification on December 6, 2020 when they engaged in protest in front of the Mayor's mansion.

### B. Defendants

17.     Defendant **CITY OF LOS ANGELES** is a municipal corporation duly organized and existing under the Constitution and laws of the State of California. The Los Angeles Police Department ("LAPD") is a local government entity and an agency of Defendant City of Los Angeles, and all actions of the LAPD are the legal responsibility of the City of Los Angeles. The City of Los Angeles is sued in its own right on the basis of its policies, customs, and practices which gave rise to Plaintiffs' federal rights claims.

18.     Defendant **CHIEF MICHEL MOORE**, is and was, at all times relevant to this action, the LAPD police chief and a policymaker for his department. He is sued in both his individual and official capacities.

19.     Defendant **LIEUTENANT CARLOS FIGUEROA** is employed by the LAPD.

20.    Defendant **LIEUTENANT WARNER CASTILLO** is employed by the LAPD.

21.    Defendant **OFFICER BRITTANY PRIMO** is employed by the LAPD.

22.    Defendant **OFFICER DANIEL ORLICK** is employed by the LAPD.

23.    Plaintiffs are informed, believe, and thereupon allege that Does 1 through 10 were the agents, servants, and employees of Defendants City of Los Angeles and/or the LAPD. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendant by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. The individual Doe Defendants are sued in both their individual and official capacities.

24.    Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto Does 1 through 10, in addition to the named Defendants, are responsible in some manner for the damages and injuries alleged herein.

25.    Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto Defendants, and each of them, were the agents, servants and employees of the other Defendants and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer. At all times Defendants were acting under color of state law.

26.    Plaintiffs are informed, believe, and thereupon allege that the practices, policies, and customs of the City of Los Angeles and/or the LAPD caused the unlawful action taken against Plaintiffs.

### IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

27.    Plaintiffs exhausted their administrative remedies by timely filing a governmental tort claim with the City pursuant to California Government Code section 910 *et seq.* The City rejected Plaintiffs' tort claim on March 23, 2021.

## V.     FACTS COMMON TO ALL CLAIMS

28.     **BLMLA** members and supporters, as well as observers, arrived at the Mayor's mansion at about 9:15 a.m. on Sunday, December 6, 2020, for a Sunday "brunch" protest. Families with children were in attendance. When they arrived, a line of LAPD officers was already on the sidewalk in front of the Mayor's mansion, on the West side of Irving Blvd., near 6th Street.

29.     The protesters gathered peacefully on the sidewalk and grass parkway across from the Mayor's mansion on the East side of Irving, just South of 6th Street. A few minutes after the protesters arrived, Defendant **FIGUEROA**, who was present almost daily since the protests began, came forward with a bullhorn and warned those assembled to stay out of the street. The announcement was largely inaudible. Defendant **FIGUEROA** provided no additional announcements or directives to those assembled. On information and belief, December 6, 2020 was the first day on which Defendant **FIGUEROA** was in charge of the police response.

30.     At about 9:22 a.m., an additional line of LAPD arrived, wearing riot gear. The officers lined up near the northeast corner of Irving and 6th, facing South towards the protesters gathered on the other side of 6th Street. Defendant **FIGUEROA** was observed giving orders to these officers.

31.     At about 9:41 a.m., the officers blocked off 6th Street and advanced towards the protesters, forming a line from the Southwest to the Southeast corner of Irving and 6th Streets.

32.     At about 9:43 a.m., Defendant **FIGUEROA** directed the officers in front of the Mayor's mansion to get into a 6x2 formation, with riot helmets and batons drawn. Defendants **FIGUEROA** and **CASTILLO** were in front talking to the officers. They were then observed loudly directing the officers to get the protester wearing blue for his use of a bullhorn, thereby directing the assault. The officers crossed the street to the East side of Irving where the protesters were

assembled, including the protester in blue. No LAPD officer had provided any warning about the use of bullhorns. The protester identified by Defendant **FIGUEROA** had a bullhorn in his hand but was not using it.

33.    Defendant **FIGUEROA** called for the entire line of officers, about fourteen in total, to attack the peaceful protesters. In clear violation of constitutional and statutory law, no declaration of an unlawful assembly and order to disperse was issued prior to the police assault. The violent attack by the officers caused the protesters to fall down and topple over each other. Seventy-two-year-old Plaintiff **AKILI** was one of the first people shoved to the ground by the officers. He was pushed from behind, landing on his hands, causing an injury to his right hand which took months to completely heal.

34.    After charging at and pushing protesters, officers began wildly and forcefully swinging their batons at protesters, some of whom had fallen to the ground.

35.    Defendant **PRIMO**, was swinging her baton wildly, lunging at people. As Plaintiff **ALLERS** attempted to get up after being pushed to the ground, Defendant **PRIMO** struck **ALLERS** in the back of her head near her ear with a baton, knocking her unconscious. Defendant **PRIMO** also struck Diana Barbadillo several times, including across her buttocks.

36.    Defendant **ORLICK** struck Plaintiff **THOMAS** in the head with his baton as she tried to help another protester that had been knocked to the ground. The baton strikes by Defendant **ORLICK** were made with such force to **THOMAS**' face that several of her teeth were loosened by the impact. He also grabbed her arm while he struck her several more times on her back and left knee. Besides knocking her teeth loose, the blows left painful bruising on **THOMAS**' left hip and left leg. **THOMAS** and **ALLERS** were both treated at Cedar Sinai Medical

Center a few hours later and **ALLERS** is still receiving ongoing medical treatment for her injuries.

37.     When Defendants **FIGUEROA** and **CASTILLO** observed LAPD officers' unlawful and potentially lethal use of batons to strike peaceful protesters in the head, they failed to intervene. At about 9:49 a.m., only after brutally attacking the peaceful crowd, Defendant **CASTILLO** for the first time declared an unlawful assembly and issued a dispersal order. The officers still had their riot gear on and their batons out. All remaining protesters left. California Penal Code § 409, which defines an unlawful assembly, has repeatedly been construed to require a showing of imminent violence that so permeates a lawful expressive activity that law enforcement may curtail the rights of all demonstrators. Facts justifying the declaration of an unlawful assembly did not exist here.

## VI.   MONELL ALLEGATIONS

38.     The **CITY**, through Chief **MOORE** and the LAPD, has failed to train and supervise its officers in the appropriate constitutional responses to peaceful demonstrations, has maintained unconstitutional policies, practices, and customs in these circumstances, and has ratified the unconstitutional conduct of its officers. The **CITY** is well aware of its constitutional duties in these circumstances in light of the settlement agreements and consent judgments discussed below in *National Lawyers Guild v. City of Los Angeles* and *MIWON v. City of Los Angeles*, as well as other settlements entered into specifying these constitutional duties over the years. The need for training and discipline to preserve constitutional guarantees in these circumstances is obvious. The **CITY** has known of the deficiencies in its training since at least 2000 and entered into settlement agreements in June 2005 and June 2009, each time agreeing to revised policies and training, yet the **CITY** has failed to promulgate adequate policies effectuating the terms of the settlement

agreement and/or to train its command staff and officers on the revised policies, if any exist.

**Settlement in *National Lawyers Guild v. City of Los Angeles,* Case No. C.D. Cal. CV 01-6877 FMC (CWx):**

39.    In June, 2005, the City of Los Angeles entered into a settlement agreement in *National Lawyers Guild, et al. v. City of Los Angeles, et al.*, CV 01-6877 FMC (CWx), an action arising from the disruption of lawful assemblies and use of unlawful force during the Democratic National Convention ("DNC") in Los Angeles in 2000 and a subsequent demonstration on October 22, 2000. The settlement provided for important changes in the policy and practices of the LAPD as applied to demonstrations.

40.    Significantly, the settlement provided that, prior to declaring an unlawful assembly, the LAPD Incident Commander should evaluate the feasibility of isolating and arresting those responsible for any unlawful conduct, and if feasible, take action only against those individuals. The settlement also addressed the use of less-lethal weapons and chemical irritants to disperse peaceful protestors.

**Settlement in *Multi-Ethnic Worker Organizing Network v. City of Los Angeles*, Case No. C.D. Cal., CV 07-3072 AHM (FMMx):**

41.    On May 1, 2007 (May Day), the LAPD assaulted a peaceful, permitted immigration march in MacArthur Park. The attack on the demonstrators was without warning. No dispersal order was given until more than three minutes into the police action and, even then, the dispersal order was grossly inadequate, given from helicopters in English to a largely Spanish-speaking assembly. During litigation, the LAPD conceded that it had not fully implemented training and policy orders regarding the *NLG* settlement two years earlier. In fact, no policy changes were ever finalized.

42.    On June 24, 2009, the federal district court approved and entered a Structural Relief Order as part of the settlement of a class action lawsuit brought on

behalf of all those subjected to the LAPD's unconstitutional practices and policies. Through this settlement, the LAPD agreed that it would facilitate demonstrations that may temporarily block traffic, to make its policies consistent with established law in the Ninth Circuit, which recognizes the need for local agencies to accommodate "spontaneous" protests in the streets, particularly in response to allegations of police misconduct.

43.    The order also set out requirements to declare an unlawful assembly: an amplified loudspeaker system with an officer at the far side of the crowd to record the officer; if there is no serious violence occurring, the order <u>shall</u> be made repeatedly over a period of time, including an "objectively reasonable" period of time to disperse and identification of "a clear and safe route" to follow to disperse. The order should be given so that it is heard by the entire crowd. These requirements were not met in this instance.

44.    The terms of the order were to be included in the LAPD's Crowd Control and Use of Force Manuals and every officer at the rank of Sergeant I and above, as well as the entire Metropolitan Division, were to undergo training every two years. Chief **MOORE**, as well as those members of his command staff to whom he has delegated his responsibility to enact and implement lawful policies for responding to demonstrations, are aware of the unlawful policies, practices, and customs of the **CITY** and the LAPD which resulted in the settlement in *National Lawyers Guild v. City of Los Angeles* in June, 2005 and *MIWON* in 2009. Moreover, Chief **MOORE** and his delegated command staff are aware that the use of unlawful dispersal orders, baton strikes and "less-lethal" weapons to break up lawful protests, in particular, is a custom so ingrained in the marrow of the LAPD that it was critical to take all steps necessary to ensure that official policy was implemented in a manner sufficient to address the deeply rooted custom to violate First Amendment rights in the specific ways identified in the *National Lawyers Guild* settlement agreement. The failure to take such steps directly lead to the injuries suffered by the

Plaintiffs. This failure amounted to an "acquiescence in the constitutional deprivations of which [the] complaint is made" and deliberate indifference to the rights of persons with whom the police come into contact, and constituted a conscious choice by the **CITY** not to properly train its law enforcement personnel on these issues.

45.     On information and belief, to the extent he did not make the decision and approve the plan himself, Chief **MOORE** delegated responsibility and authority to persons within his command staff to act as the final policy maker in determining the response to daily assemblies at the Mayor's Mansion in November and December 2020. The persons who made these decisions, acted as the delegated policy maker for the City of Los Angeles on these issues. There was no time, opportunity, or procedure for anyone to review or revise the decisions made by these delegated policy makers prior to their final implementation.

## VII.   CLASS ACTION ALLEGATIONS

46.     The named Plaintiffs bring this action individually and on behalf of a proposed damages class of all other persons similarly situated pursuant to F.R.Civ.P. Rule 23(b)(1) and 23(b)(3). All class members were struck with batons and/or knocked down by the actions of LAPD officers.

47.     Class members who were struck with batons and/or knocked down were injured in a manner that evinced that Defendants applied force unlawfully. Class members were struck in the face, head, shoulder, buttocks, and breast areas. LAPD personnel struck them with batons to injure and punish them on site.

48.     Defendants used unreasonable and excessive force indiscriminately, engaging in baton strikes and knocking down protesters, not based on an individualized assessment of conduct justifying such force – more specifically where the person was not violently resisting arrest and did not present an immediate threat of violence or physical harm, in violation of the Fourth Amendment and its

state law analogues. Further, this conduct was deliberately indifferent to the damages class members rights, shocks the conscience, and violates the decencies of civilized conduct, under the Fourteenth Amendment and its state law analogues.

49.    As a result of Defendants' wrongful conduct, the damages class members suffered damages as alleged above.

**A. Class Definition – 23(b)(3) (Damages Class)**

50.    The damages class is defined as all persons who were present on December 6, 2020, near the Mayor's mansion on Irving Street near 6th Street, who were participating in or observing a public **BLM-LA** organized demonstration and who were struck by batons or knocked down by LAPD officers, and who were neither violently resisting nor posing an immediate threat of violence or physical harm.

**B. Rule 23 Prerequisites**

    **a.  Numerosity**

51.    The putative class consists of approximately 50 individuals. In accordance with F.R.Civ.P. Rule 23(a), the members of the class are so numerous that joinder of all members is impracticable.

**C. Common Issues of Law or Fact**

52.    Questions of law or fact common to putative class members predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating this lawsuit. Alternatively, Defendants have acted on grounds generally applicable to the class. Defendants treated all similarly, hitting individuals with baton and/or knocking them down during the protest. Plaintiffs are informed and believe and thereon allege that the LAPD officers acted in accordance with orders given by supervisors from the highest command positions, in accordance with policies and procedures instituted by the LAPD and the City of Los Angeles.

53.     The named Plaintiffs' claims that their First, Fourth, and Fourteenth Amendment rights – and their analogous state Constitution, statutory and common law rights – were violated raise common questions of law and fact.

54.     Common questions of law and fact include, but are not limited to:

● Did Defendants break up the protest through the use of force although the individuals against whom such force was used were not engaged in conduct justifying such force?

● Did Defendants have a lawful basis to declare an unlawful assembly?

● Was any protest participant or observer engaged in conduct justifying arrest?

● Did Defendants evaluate the feasibility of isolating and arresting anyone responsible for any unlawful conduct, and if feasible, take action only against that individual/s?

● Was any protest participant or observer engaged in conduct justifying the use of force?

● Whether Defendants breaking up the protest through the use of force, although those present were not engaging in conduct justifying such force, violates the First, Fourth, and Fourteenth Amendments and their state analogues?

● Must Defendants when declaring unlawful assemblies, provide adequate sound amplification and provide both directions, means and opportunity to disperse before taking aggressive and injurious – and potentially deadly – police action?

● Must Defendants evaluate the feasibility of isolating and arresting anyone responsible for any unlawful conduct, and if feasible, take action only against those individuals?

● Did some or all of the conduct described above constitute a policy or custom of Defendants?

● If the answer to the foregoing question in yes, was that policy or custom a moving force in the violation of Plaintiffs' rights?

● Is any individual Defendant sued in their individual capacity entitled to qualified immunity on the federal claims?

● Did any of the conduct alleged herein violate Cal. Civil Code § 52.1 (the Bane Act)?

● Are general class-wide damages available?

● Are statutory damages under § 52.1 available to the damages class?

● Did any of the conduct alleged herein violate Cal. Civil Code § 51.7 (the Ralph Act)?

55.    The questions of law and fact common to the classes, as outlined above, predominate over any questions affecting only individual members.

**D. Typicality**

56.    In accordance with F.R. Civ. P. Rule 23(a), the claims of the representative Plaintiffs are typical of the class. Plaintiffs were all present at the December 6, 2020 protest; were subjected to one or more of the violations previously enumerated; and seek redress for the past violations of their rights and protection to bar the repeat of those violations in the future.

57.    Thus, Plaintiffs have the same interests and have suffered the same type of damages as the class members. Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members of each class. Each class member suffered actual damages as a result of being subjected to one or more of the violations enumerated above. The actual injuries suffered by Plaintiffs are similar in type to the actual damages suffered by each class member although the severity of those injuries may vary among class members.

58.    In accordance with F.R. Civ. P. Rule 23(a), the representative Plaintiffs will fairly and adequately protect the interests of the class. The interests of the representative Plaintiffs are consistent with and not antagonistic to the interests of the class.

### E. Adequate Representation

59.    The named Plaintiffs will fairly and adequately represent the common class interest. The named Plaintiffs have a strong interest in achieving the relief requested in this Complaint, they have no conflicts with members of the Plaintiff class, and they will fairly and adequately protect the interests of the class.

60.    The named Plaintiffs are represented by counsel who are well-experienced in civil rights and class action litigation and are familiar with the issues in this case. Attorney Carol Sobel has successfully litigated a number of class action cases on behalf of protesters in Los Angeles. She was appointed by the court as class counsel in *Aichele, et al. v. City of Los Angeles, et al.*, No. 2:12-CV-10863-DMG (C.D. Cal. August 26, 2012), challenging, *inter alia*, the LAPD's denial of OR release to 300 persons arrested during the Occupy action at Los Angeles City Hall. She was appointed by the court as class counsel in *Chua v. City of Los Angeles,* Case No. CV 2:16-cv-00237-JAK-GJS(x) (C.D. Cal. January 12, 2016), which involved protests over the police killing of Michael Brown in Ferguson, Mo.). She was also appointed as class counsel in *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, 24 F.R.D. 631 (C.D. Cal. 2007), challenging the LAPD's assault on a lawful immigrant-rights rally in MacArthur Park on May 1, 2007. That case resulted in a settle of $12,850,000 -- the largest amount ever paid nationally in a protest case in which there were no arrests of the Plaintiffs. Attorney Sobel was also involved in revising the LAPD's Crowd Control Manual provisions in 1993, following the protests of the Rodney King beating.  She was also lead counsel in several multiple-plaintiff cases challenging LAPD protest practices arising from the Democratic National Convention in Los Angeles in 2000, which resulted in significant structural relief. In addition to class action protest litigation, attorney Sobel has served as class counsel in a number of other class actions redressing civil rights violations.

61.     Counsel for the named Plaintiffs know of no conflicts among or between members of the class, the named Plaintiffs, or the attorneys in this action.

**F.  Maintenance and Superiority**

62.     In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the classes would create a risk that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

63.     In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the classes would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

64.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. Plaintiffs are informed and believe, and thereon allege, that the interests of class members in individually controlling the prosecution of a separate action is low in that most class members would be unable to individually prosecute any action at all. Plaintiffs are informed and believe, and thereon allege, that the amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them. Plaintiffs are informed and believe, and thereon allege, that it is desirable to have all litigation in one forum because all of the claims arise in the same location, *i.e.,* the County of Los Angeles. It will promote judicial efficiency to resolve the common questions of law and fact in one forum rather than in multiple courts.

65.     Plaintiffs do know the identities of many class members. Plaintiffs are informed and believe, and thereon allege, that a significant number of class members may be reached by the use of outreach efforts by the Plaintiff organization that participated in organizing the affected protest.

66.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues. Leading members of Plaintiffs' counsel managed similar litigation with similarly disparate damages as a result of LAPD conduct in breaking up the May Day 2007 protests that resulted in the *MIWON* litigation described previously, as well as the *Aichele* and *Chua* litigation, all of which was against the City of Los Angeles and the LAPD. Liability can be determined on a class-wide basis. General damages can also be determined on a class-wide basis.

67.     In accordance with Fed.R.Civ.P. Rule 23(b)(3), class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs contemplate that individual notice be given to class members by email, social media, and cell phone outreach, and efforts of **BLM-LA** who organized the protest. Plaintiffs contemplate that the notice will inform class members of the following regarding their damages claims:

  a. The pendency of the class action, and the issues common to the class;

  b. The nature of the action;

  c. Their right to 'opt out' of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

  d. Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named Plaintiffs and their counsel; and

e. Their right, if they do not 'opt out,' to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues, adverse to the class.

68.    As a direct and proximate cause of the conduct described herein, the named individual Plaintiffs and the class members have been denied their constitutional, statutory, and legal rights as stated herein, and have suffered general and special damages, including but not limited to, mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety and other damages in an amount according to proof.

69.    Defendants' acts were willful, wanton, malicious, and oppressive, and done with conscious or reckless disregard for, and deliberate indifference to, Plaintiffs' rights.

70.    All of the following claims for relief are asserted against all Defendants.

71.    Plaintiffs restate and incorporate by reference each of the foregoing and ensuing paragraphs in each of the following causes of action as if each paragraph was fully set forth therein.

**FIRST CLAIM FOR RELIEF –**
Freedom of Speech and Association
(42 U.S.C. § 1983 1st and 14th Amendments)

(All Plaintiffs Against All Defendants)

72.    Plaintiffs re-allege and incorporate by reference all preceding and subsequent paragraphs as though fully set forth herein.

73.    All of the acts of Defendants and the persons involved were done under color of state law.

74.    The acts of Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** deprived Plaintiffs of the rights, privileges, and

immunities secured by the Constitution and laws of the United States, including but limited to their rights under the First Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment by, among other things, retaliating against Plaintiffs for engaging in constitutionally protected activity.

75.    Plaintiffs engaged in constitutionally protected acts of organizing, observing, recording, and participating in an event of public interest, specifically a public demonstration, and in expressing their political views.

76.    Defendants targeted and/or retaliated against Plaintiffs for engaging in constitutionally protected activity and for the content and viewpoint of their expressions.

77.    Defendants' acts would chill a reasonable person from continuing to engage in a constitutionally protected activity.

78.    As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiffs **AKILI, ALLERS**, and **THOMAS** sustained and incurred damages including pain, suffering and emotional injury. Plaintiff **BLMLA** sustained and incurred damages to the organization including instilling fear in its members that, if they chose to assemble in public spaces to express their opinions, they would be the subject of such violence and arrest.

79.    The conduct of Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** was willful, wanton, malicious, and done with an evil motive and intent and reckless disregard for the rights of the Plaintiffs and therefore warrants the imposition of exemplary and punitive damages against aforementioned Defendants in an amount adequate to punish the wrongdoers and deter future misconduct.

## SECOND CLAIM FOR RELIEF –
Excessive Force
(42 U.S.C. § 1983 4th and 14th Amendments)

(Plaintiffs Akili, Allers, and Thomas Against
Defendants Figueroa, Castillo, Orlik, Primo and Does 1-5)

80.    Plaintiffs reallege and incorporate herein by reference the preceding and any subsequent paragraphs of this Complaint as though fully set forth herein.

81.    All of the acts of Defendants and the persons involved were done under color of state law.

82.    The acts of Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** deprived Plaintiffs of the rights, privileges, and immunities secured by the Constitution and laws of the United States, including but limited to their rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by among other things, subjecting them to unreasonable and excessive force. Specifically, Plaintiffs **AKILI, ALLERS**, and **THOMAS** were struck with batons and/or knocked down to the ground by the action of LAPD officers who were indiscriminately engaging in baton strikes and knocking down protesters, not based on an individualized assessment of conduct justifying such force – more specifically where the person was not violently resisting arrest and did not present an immediate threat of violence or physical harm, in violation of the Fourth Amendment and its state law analogues. Further, this conduct was deliberately indifferent to Plaintiffs' rights, shocks the conscience, and violates the decencies of civilized conduct, under the Fourteenth Amendment and its state law analogues.

83.    Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** were both personally involved and integral participants in the violation of Plaintiffs' constitutional rights because each officer was aware of the unlawful actions of the other officers, did not object to the these violations of Plaintiffs'

rights, and participated in the violations by performing police functions, including meaningful participation in the needless and unnecessary operation to escalate the encounter with Plaintiffs and use unjustified force.

84.    As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiffs **AKILI, ALLERS**, and **THOMAS** sustained and incurred damages including pain, suffering and emotional injury.

85.    The conduct of Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights of the Plaintiffs and therefore warrants the imposition of exemplary and punitive damages against aforementioned Defendants in an amount adequate to punish wrongdoers and deter future misconduct.

### THIRD CLAIM FOR RELIEF –
Failure to Intervene
(42 U.S.C. § 1983 4th and 14th Amendments)

(Plaintiffs Akili, Allers, and Thomas Against
Defendants Figueroa, Castillo, Orlik, Primo and Does 1-5)

86.    Plaintiffs reallege and incorporate herein by reference the preceding and any subsequent paragraphs of this Complaint as though fully set forth herein.

87.    All of the acts of Defendants and the persons involved were done under color of state law.

88.    The acts of Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** deprived Plaintiffs of the rights, privileges, and immunities secured by the Constitution and laws of the United States, including but limited to their rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by among other things, failing to intervene in the unlawful actions of

other officers, including indiscriminately engaging in baton strikes and knocking down protesters, not based on an individualized assessment of conduct justifying such force – more specifically where the person was not violently resisting arrest and did not present an immediate threat of violence or physical harm, in violation of the Fourth Amendment and its state law analogues. Further, this conduct was deliberately indifferent to Plaintiffs' rights, shocks the conscience, and violates the decencies of civilized conduct, under the Fourteenth Amendment and its state law analogues.

89.     Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** were both personally involved and an integral participant in the violation of Plaintiffs' constitutional rights because each officer was aware of the unlawful actions of the other officers, did not object to the these violations of Plaintiffs' rights, and participated in the violations by performing police functions, including meaningful participation in the needless and unnecessary operation to escalate the encounter with Plaintiffs and use unjustified force.

90.     As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiffs **AKILI, ALLERS**, and **THOMAS** sustained and incurred damages including pain, suffering and emotional injury.

91.     The conduct of Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights of the Plaintiffs and therefore warrants the imposition of exemplary and punitive damages against aforementioned Defendants in an amount adequate to punish wrongdoers and deter future misconduct.

**FOURTH CLAIM FOR RELIEF –**
Municipal Liability –
Unconstitutional Policy, Practice, or Custom; Ratification;
Failure to Train, Supervise, Discipline, or Correct

(42 U.S.C. § 1983)

(All Plaintiffs Against Defendants City, Moore, and Does 6-10)

92.    Plaintiffs re-allege and incorporate by reference the preceding and subsequent paragraphs as though fully set forth herein.

93.    As described above, the acts of Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** deprived Plaintiffs of their rights under the United States Constitution.

94.    Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** acted under the color of law.

95.    Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5** acted pursuant to expressly adopted official policies or longstanding practices or customs of Defendants **CITY, MOORE**, the relevant policy maker, and **DOES 6-10**. Defendants **CITY, MOORE**, and **DOES 6-10** acted with deliberate indifference, and in conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiffs and others similarly situated, including the right to be free from unreasonable and excessive force, and the right to be free from retaliation for engaging in protected speech and activity under the First and Fourth Amendments. Furthermore, Defendants **CITY, MOORE**, and **DOES 6-10** were deliberately indifferent to the obvious consequences of their failure to train their officers adequately. They knew that the failure to adequately train their officers made it highly predictable that their officers would engage in conduct that would deprive persons of their constitutional rights.

96.    Properly trained officers are trained to facilitate peaceful protesters' exercise of First Amendment rights.

97.    Properly trained officers are trained to use less lethal force only in response to someone violently resisting arrest or who poses an immediate threat of violence or physical harm. Defendants **FIGUEROA, CASTILLO, ORLIK,**

**PRIMO,** and **DOES 1-5** used less lethal force against Plaintiffs even though they were not violently resisting arrest and posed no immediate threat of violence or physical harm to the officers or anyone else.

98.     The **CITY**, through Chief **MOORE** and the LAPD, has failed to train its officers in the constitutional responses to peaceful protests as revealed by the above allegations despite the long history of such violations in the past, and Defendants' commitment to correct them in the form of both court orders and settlement agreements.  The recurrence of the same violations with respect to these arrests indicates an intentional refusal to preserve the constitutional rights of protestors.

99.     Based on the aforementioned facts, Defendants **CITY, MOORE**, and **DOES 6-10** as policymakers and supervisors maintained the following unconstitutional customs, practices, and policies:

a.     Using excessive force, including excessive less than lethal force in crowd control situations including but not limited to engaging with peacefully protesting individuals;

b.     Providing inadequate training regarding the use of "less lethal" force such as batons in crowd control situations, including during encounters with individuals who are peacefully protesting;

c.     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, and disciplining and controlling the intentional misconduct by LAPD officers including Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5**;

d.     Failing to adequately discipline LAPD personnel, including Defendants **FIGUEROA, CASTILLO, ORLIK, PRIMO,** and **DOES 1-5**, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion

to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

e. Announcing that unjustified uses of force are "within policy," including uses of force later determined to be unconstitutional;

f. Refusing to discipline, terminate, or retrain the personnel involved, even where uses of force were determined in court to be unconstitutional and where officers commit repeated constitutional violations;

g. Other policies, practices and customs as may established through discovery to have been the moving force or proximate cause of Plaintiffs' constitutional deprivations, including but not limited to, express authorization, ratification, failure to train and failure to supervise and discipline misconduct such as indiscriminately engaging in baton strikes and knocking down protesters, not based on an individualized assessment of conduct justifying such force – more specifically where the person was not violently resisting arrest and did not present an immediate threat of violence or physical harm.

100. Defendants **CITY, MOORE**, and **DOES 6-10** together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Despite having such knowledge, these Defendants condoned, tolerated, and through actions and inactions ratified such policies.

101. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the aforementioned defendants, Plaintiffs sustained and incurred damages including pain, suffering, and emotional injury.

102.   The conduct of Defendants **CITY, MOORE**, and **DOES 6-10** was willful, wanton, malicious, and done with an evil motive and intent and reckless disregard for the rights of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages against Defendants **CITY, MOORE**, and **DOES 6-10** in an amount adequate to punish the wrongdoers and deter future misconduct.

### FIFTH CLAIM FOR RELIEF –
Violation of the Bane Act (Cal. Civil Code § 52.1);
Cal. Constitution, Article 1, §§ 2 (Freedom of Speech), 3 (Right of Petition and Assembly), 7 (Due Process), 13 (Search and Seizure), 19 Cruel and Unusual Punishment)

(All Plaintiffs Against All Defendants)

103.   Plaintiffs re-allege and incorporate by reference the preceding and subsequent paragraphs as though fully set forth herein.

104.   The federal and state constitutions guarantee the right to assembly and to petition the government for a redress of grievances, the right to be free from unnecessary and excessive force by law enforcement officers, as well as the rights to due process and to be free from cruel and unusual punishment. Defendants, by engaging in the wrongful acts and failures to act alleged above, denied these rights to Plaintiffs by threats, intimidation, or coercion, to deter, prevent and in retaliation for the exercise of Plaintiffs' First Amendment rights, in violation of Cal. Civ. Code § 52.1.

105.   The use of unreasonable force by Defendants was a substantial factor in causing the violation of rights and attendant harm by Plaintiffs.

106.   Defendant **CITY** of Los Angeles is liable for the wrongful conduct of its employees through the doctrine of respondeat superior.

107.   Defendants' actions as set out above and further on in this complaint constituted interference by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or

laws of the United States, or of the rights secured by the Constitution or laws of California in violation of Cal. Civil Code §52.1. The violation of § 52.1 includes violations of the rights of class members as outlined throughout this Complaint.

108.   As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiffs sustained damages, including but not limited to general damages, statutory damages and treble statutory damages under Cal. Civ. Code § 52, but no less than $4,000 for each incident, and pain and suffering.

**SIXTH CLAIM FOR RELIEF –**
Assault

(By Plaintiffs Akili, Allers, and Thomas Against
Defendants Figueroa, Castillo, Orlik, Primo and Does 1-5)

109.   Plaintiffs re-allege and incorporate by reference the preceding and subsequent paragraphs as though fully set forth herein.

110.   Defendants approached Plaintiffs **AKILI, ALLERS,** and **THOMAS** dressed in riot gear and wielding batons. Aforementioned Plaintiffs, all peaceful protesters, reasonably believed the officers would use such force against them.

111.   As a direct and proximate result of the aforementioned acts or omissions, Plaintiffs **AKILI, ALLERS,** and **THOMAS** sustained and incurred damages including pain, suffering, and emotional injury.

112.   The **CITY** of Los Angeles is liable for the actions of its employees through respondeat superior.

**SEVENTH CLAIM FOR RELIEF**
Battery by a Police Officer

(By Plaintiffs Akili, Allers, and Thomas Against
Defendants Figueroa, Castillo, Orlik, Primo and Does 1-5)

113.   Plaintiffs re-allege and incorporate by reference the preceding and subsequent paragraphs as though fully set forth herein.

30
COMPLAINT: CLASS ACTION

114. Defendants, by the actions of the officers of the Los Angeles Police Department, intentionally touched Plaintiffs **AKILI, ALLERS,** and **THOMAS** without their consent and without lawful justification by shoving them and beating them with batons, resulting in bodily injury to their person.

115. As a direct and proximate result of the aforementioned acts or omissions, Plaintiffs **AKILI, ALLERS,** and **THOMAS** sustained and incurred damages including physical injuries and pain and suffering.

116. The use of unreasonable force by the LAPD officers was a substantial factor in causing harm to Plaintiffs.

117. The **CITY** of Los Angeles is liable for the actions of its employees through respondeat superior.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs seek judgment as follows:

1. An order certifying the injunctive and damages class as defined herein pursuant to Federal Rules of Civil Procedure Rule 23(b)(3);

2. A declaratory judgment that Defendants' conduct detailed herein violated Plaintiffs' rights under the Constitution and laws of the United States and the State of California;

3. General and compensatory damages for Plaintiffs and the class they represent for the violations of their federal constitutional and statutory rights, pain and suffering, all to be determined according to proof;

4. An award of attorneys' fees pursuant to 42 U.S.C. § 1988 and Cal. Civil Code §§ 52(b) & 52.1(h) and Cal. Code of Civ. Proc. § 1021.5;

5. Costs of suit;

6. Pre- and post-judgment interest as permitted by law;

7. Such other and further relief as the Court may deem just and proper.

Dated:          9/9/2021

                              Respectfully submitted,

                              ___s/ Paul Hoffman___

                              Paul L. Hoffman

                              SCHONBRUN, SEPLOW,
                              HARRIS, HOFFMAN & ZELDES LLP
                              Carol A. Sobel
                              LAW OFFICE OF CAROL A. SOBEL
                              COLLEEN FLYNN
                              LAW OFFICE OF COLLEEN FLYNN
                              SHAKEER RAHMAN
                              LAW OFFICE OF SHAKEER RAHMAN
                              CHRISTOPHER MARTIN
                              LAW OFFICE OF CHRISTOPHER MARTIN

### DEMAND FOR JURY TRIAL

Plaintiffs hereby make a demand for a jury trial in this action.

Dated:          9/9/2021

                              Respectfully submitted,

                              ___s/ Paul Hoffman___

                              Paul L. Hoffman

                              SCHONBRUN, SEPLOW,
                              HARRIS, HOFFMAN & ZELDES LLP
                              Carol A. Sobel
                              LAW OFFICE OF CAROL A. SOBEL
                              COLLEEN FLYNN
                              LAW OFFICE OF COLLEEN FLYNN
                              SHAKEER RAHMAN
                              LAW OFFICE OF SHAKEER RAHMAN
                              CHRISTOPHER MARTIN
                              LAW OFFICE OF CHRISTOPHER MARTIN